# DECISIONS

OF THE

# SUPREME COURT OF MISSOURI,

SECOND JUDICIAL DISTRICT, APRIL TERM, 1835.

## ZACHARIAH G. DRAPER v. JAMES CLEMENS JUN.

1. Suit by payee of bill of exchange against the drawer, acceptor having failed to pay, and bill protested for non payment.
2. Held. That demand of payment at the counting room of acceptor—of his clerk—sufficient, without shewing any special authority given the clerk, in regard to such matters, by his principal.
3. Demand of payment and protest of bill on *third day of grace*, proper.
4. The notary's protest is evidence of presentment and refusal to pay.
5. The notary may prove presentment for payment—refusal to pay and notice thereof, although he keeps a register of those matters.
6. When payment of a bill is demanded, it should be produced.
7. Proof that notice was sent by mail to &c. the place of residence of the drawer, and that witness believed [but was not certain] there was a post office there in that year, not sufficient.

WRIT of error to the circuit court of Pike county.

Opinion of the court delivered by TOMPKINS, J.*

Clemens brought this action, and having obtained judgment, to reverse it, Draper prosecutes this writ of error. The facts appearing on the record are, that Draper drew in favor of Clemens on one Simmons in the city of St. Louis. His draft was accepted by Simmons before it became due, the Notary public at Clemens' request went to the counting room of Simmons who was a merchant, during the hours of business to demand payment. There he enquired for Simmons and was told by his clerk that he was not in. The Notary then demanded payment of the clerk, and was told that he could not pay it. The draft was then protested for non payment, and on the next day a letter was put into the post office directed to Draper at Hannibal Missouri.

The protest was given in evidence and the Notary's deposition was read to prove the facts above stated. The draft was dated 6th July, 1829, and payable 60 days after date. It was protested for non payment on the 7th day

---

* Judge Wash absent.

APRIL TERM
1835.

Draper
v.
Clemens.

of September, which was the third day of grace, and the name of Clemens was indorsed in blank on it. A witness also testified that he believed there was a post office at Hannibal in 1828 or 9, but was not certain, and that Draper then lived there. The defendant prayed the court to instruct the jury, 1st, that a presentment to Simmons' clerk at his counting room (he being absent) was not sufficient unless it had been shewn that the clerk had been authorised to transact such business.

2nd. If they believed that the notice of the dishonor of the bill was made out on the third day of grace, then the same was made out before the plaintiff had a right to consider it as dishonored.

3rd. That the protest of the bill is not evidence of the presentment of the bill for payment, and of the refusal to pay.

4th. If they believe the Notary was acting only in his official character, then his acts can be proved by a copy only of his record attested by his seal of office.

These instructions were refused. After verdict and judgment the defendant moved for a new trial, because,

1st, The court admitted improper testimony.

2nd. The verdict was not warranted by the evidence.

3rd. The verdict is against law and evidence.

This motion was overruled. The points arising out of the instructions are: 1st, Is the presentment for payment to Simmons' clerk at his counting room good, Simmons being absent, and it not being proved that the clerk was authorized to pay bills and to transact such business. 2nd. Is the third day of grace the day on which payment ought to be demanded. 3rd. Is the protest evidence of the presentment of the bill for payment and of the refusal to pay. 4th. Is the transcript of the register which the statute requires the Notary to keep the only evidence he can give of the presentment and refusal to pay, when he acts in his official character.

Held. That demand of payment at the counting room of acceptor —of his clerk sufficient, without showing any special authority given the clerk, in regard to such matters, by his principal.

1st. At common law the debtor was required to follow the person of the creditor and tender payment when the debt became due. By the law merchant the presentment for payment when no place is named in the bill of exchange or in the acceptance, must be made at the house of the acceptor. See Chitty on bills p. 266. On that day then it was the duty of the acceptor to be present, or to have an agent there. And it would be a very hard law that would require the holder of the bill to prove that the demand was made at a merchant's counting room of a clerk, to whom that merchant, the debtor, had given au-

-thority to pay. Most debtors, if such were the law, would be very careless about giving authority to their clerks to pay bills. The first instruction then was well refused as we think.

2nd. In England inland bills could not be protested for non payment till the day after they became due.

See Chitty bills 318–19, and no days of grace were allowed. Foreign bills were payable on the day they became due, and when the days of grace were adopted as a part of the law of the land, the protest was made for non payment on the third day of grace, and if the third day happened on Sunday or some other days, the bill might then be protested on the second. The third section of our act concerning bills of exchange provides that, if any bill dated at any place in this State, and payable at any other place in the State, and being accepted, shall not be paid before the expiration of the third day after it shall become due &c. We see nothing in the statute which indicates a wish of the legislature that the holder should wait till the fourth day to protest for non payment. It is very true that the law, as was argued, allows the debtor till the last moment of the day to pay. It is also but reasonable that the creditor should be allowed to demand payment on the third day at the common and convenient hours of doing business, and it has not been made to appear that this debtor either kept his doors open till midnight to pay, or tender the money before that time. It is then reasonable to conclude that he has suffered no injury, as the acceptor might have paid the money at the time of day when alone a good demand could have been made. This instruction then was rightly refused.

*Demand of payment and protest of bill on third day of grace, proper.*

3rd. The defendant contends that the copy of the register alone is evidence. The register is made out from the protest. It is difficult to conceive how the copy can be better evidence than the original, both being official acts.

*The notary's protest is evidence of presentment and refusal to pay.*

The third instruction was too, we think, well refused.

4th. The objection to the testimony of the Notary to prove presentment for payment, refusal to pay and notice of dishonor is we think equally unfounded, the statute requiring him to keep a register not making it evidence. The points arising out of the reasons assigned for granting a new trial are: 1st, That the witness did not show that he had the draft in his possession and produced it when he demanded payment.

2nd. Was the notice of the dishonor of his draft given to Draper sufficient.

*The notary may prove presentment for payment—refusal to pay and notice thereof, although he keeps a register of those matters.*

*When payment of a bill is demanded it should be produced.*

APRIL TERM
1835.

Gibbs
v.
Mann Adm'r.

Proof that notice
was sent by mail
to &c. the place
of residence of the
drawer, and that
witness believed
(but was not cer-
tain) there was a
post office there
in that year, not
sufficient.

1st. The person demanding payment should have pro-
duced the draft. See Chitt. bills p. 260 note.

2nd. It was testified by one witness that he believed
there was a post office at Hannibal in 1828 or nine, but
witness is not positive. This it seems was Draper's
place of residence in 1829, and on such vague testimony a
jury, we may presume, had their attention been called to
it, would not have found a verdict, but that being found
the court ought on motion to have granted a new trial.
For the last two reasons the judgment of the circuit court
is reversed and the cause remanded.